[Cite as *State v. Idler*, 2019-Ohio-2159.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2018-09-008<br>CA2018-09-009 |
| | : | |
| - vs - | : | O P I N I O N<br>6/3/2019 |
| | : | |
| ANITA IDLER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case Nos. CR2018-2004 and CR2018-2130

Zachary A. Corbin, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for appellee

Timothy Young, Ohio Public Defender, Craig M. Jaquith, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for appellant

**PIPER, J.**

{¶ 1} Appellant, Anita Idler, appeals her convictions and sentence in the Brown County Court of Common Pleas for theft of a firearm, receiving stolen property, conveyance of drugs into a detention facility, and drug possession.

{¶ 2} Idler knocked on the door of an 87-year-old-man and asked if she could use his phone. The victim allowed Idler into his apartment, but asked her to leave when he noticed

that she was holding a cell phone in her hand. Instead of leaving, Idler picked up a muzzleloader pistol that was on display in the victim's living room. Idler inquired about the item and the victim told Idler that it was a pistol. Idler asked for a drink of water, and the victim went to his refrigerator and came back with a bottle of water. Idler then left the victim's home.

{¶ 3} After Idler left the victim's home, he noticed that his muzzleloader pistol was gone.[1] The victim informed police of the theft and gave an officer a description of the woman. He also reported that the woman carried a large purse and was wearing boots with gray pants and a multi-colored jacket. The victim also described a unique ring the woman wore.

{¶ 4} The victim was able to later identify Idler from photographs the officer showed him. The officer interviewed Idler, and she told him she had never been in the man's home. When the officer asked Idler to accompany him to the police station for questioning, Idler stated that she knew who had the gun and could get it back. Idler also told the officer that she and another person had stopped at the man's house the evening before. She further told the officer that the other person handled the gun while she used the phone.

{¶ 5} Idler was indicted on theft and receiving stolen property and a deputy arrested her. The deputy searched Idler before placing her in a police crusier and found a wrench and several pennies. At the jail, a pat down revealed nothing on Idler's person. However, when Idler was preparing to shower and change into the jail uniform, a corrections officer observed a small plastic bag fall out of Idler's bra onto the floor. Idler told the corrections officer that the baggie contained methamphetamine residue and that she forgot the baggie was in her

---

1. A muzzleloader is commonly known as a firearm loaded from the end of the muzzle with black powder used to expel a single projectile before reloading is necessary. A muzzleloader can be a long gun (rifle) or a handgun (pistol).

bra.

{¶ 6} In two separate cases, which have been consolidated for purposes of appeal, Idler was charged with theft of a firearm, receiving stolen property, illegal conveyance of drugs into a detention facility, and possession of drugs. After a bench trial, the trial court found Idler guilty on all counts. The trial court sentenced Idler to an aggregate 60-month sentence. Idler now appeals her convictions and sentence, raising two assignments of error. As both assignments of error challenge the sufficiency of evidence supporting the convictions, we will address them together.

{¶ 7} Assignment of Error No. 1:

{¶ 8} MS. IDLER'S DUE-PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT ENTERED WITHOUT SUFFICIENT EVIDENCE A CONVICTION FOR ILLEGAL CONVEYANCE OF A DRUG OF ABUSE INTO A DETENTION FACILITY. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION.

{¶ 9} Assignment of Error No. 2:

{¶ 10} MS. IDLER'S DUE-PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT ENTERED CONVICTIONS FOR THEFT OF A FIREARM AND FELONY-FOUR RECEIVING STOLEN PROPERTY IN THE ABSENCE OF SUFFICIENT EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE 1, SECTIONS 10 AND 16, OHIO CONSTITUTION.

{¶ 11} Although she couches her argument in terms of due process, Idler argues in her assignments of error that her convictions were not supported by sufficient evidence.

{¶ 12} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if

believed, would support a conviction. *State v. Krieger*, 12th Dist. Warren No. CA2017-12-167, 2018-Ohio-4483. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 13} Idler was convicted of illegal conveyance of drugs into a detention facility in violation of R.C. 2921.36(A)(2), which prohibits the knowing conveyance of drugs into a detention facility. A person acts knowingly "regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 14} Idler was also convicted of theft of a firearm in violation of R.C. 2913.02(A)(1), which provides that "no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent."

{¶ 15} According to R.C. 2923.11(B)(1), firearm "means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." According to R.C. 2923.11(B)(2), "when determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

{¶ 16} Idler was also convicted of receiving stolen property in violation of R.C.

2913.51(A), which provides, "no person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶ 17} During the bench trial, the state presented evidence that, when viewed in a light most favorable to the prosecution, is sufficient to support Idler's convictions.

{¶ 18} The victim testified that he heard knocking on his door and that a woman asked him where a certain apartment was and then asked to use his phone. The victim allowed the woman to enter his apartment, but asked her to leave when he noticed that she was not using his phone and instead had a cell phone in her hand.

{¶ 19} Before leaving, the woman went over to the victim's television stand and asked what he had on display there. The victim testified that he told the woman that it was a pistol and that she picked it up and set it back down before asking for a drink of water. The victim further testified that he went to his refrigerator to get the woman a bottle of water and that she left after he gave it to her. The victim noticed that the gun was missing after the woman left. The victim also testified that he built the gun himself and that he had fired it before. Thus, the victim confirmed that the muzzleloader was capable of firing a bullet.

{¶ 20} The victim testified that he informed police that his muzzleloader had been stolen and that he gave a description of the woman to police, including her outfit and a distinctive ring she wore. A few days later, the victim was able to identify the woman from photographs shown him by police. The victim recognized Idler from the photographs and told the officer that he also recognized the hat and purse she was wearing in the photographs because she had them when she was in his apartment as well.

{¶ 21} The state next presented testimony from the officer who took the victim's theft report. The officer testified that after the victim identified Idler from the photographs, he went

to Idler's residence, which was within walking distance of the victim's apartment, and spoke with Idler about the theft.  Idler claimed that while she was at a gas station near the victim's home, she never knocked on the victim's door nor entered his apartment.  The officer testified that he observed Idler wearing a ring that matched the victim's description and that Idler's build matched the victim's description as well.

{¶ 22} The officer also testified that he asked Idler if she would consent to a search of her home and that Idler declined.  However, Idler admitted to the officer that she was on drugs at the time.  The officer took a photograph of Idler and returned to the victim's home.  Based on that photograph, the victim confirmed that Idler was the woman who came to his apartment on the day of the incident.  The officer also confirmed Idler's identification with a worker at the gas station Idler told the officer she went to on the day of the theft.  The officer took stills from the gas station's security cameras, and later confirmed with the victim that Idler was wearing the same outfit when she was in his apartment.

{¶ 23} The officer further testified that he returned to Idler's home and asked her to go to the police station to answer questions.  As Idler was walking with the officer toward his patrol car, she told the officer that she did not know where the gun was but did know who had it.  She further told the officer that she would go and retrieve the gun and give it back to the victim.  When questioned about the theft, Idler told the officer that she and a friend went into the victim's apartment and she used the phone.  Idler told the officer that her friend was near the stand where the victim displayed the muzzleloader and that her friend stole the gun.  However, Idler refused to name her friend and then asked for an attorney.

{¶ 24} The state next presented testimony from a deputy who arrested Idler for the theft after she had been indicted.  The deputy testified that when she tried to execute the arrest warrant, Idler fled through her home's back door and tried to jump over a fence.  Once

the deputy was able to capture Idler, she performed a search of Idler's person before placing her in the police cruiser. The deputy testified that she found a wrench and pennies on Idler's person.

{¶ 25} Once Idler was taken to the jail, the deputy observed a corrections officer search Idler's person during which nothing was found. However, the deputy was informed a short time later that a baggie fell out of Idler's bra when she was removing her clothing in order to shower and change into a jail uniform. The corrections officer told the deputy that Idler picked up the baggie and tried to throw it. The deputy further testified that the baggie was sent to a laboratory for testing and that the results showed the baggie contained trace amounts of methamphetamine.

{¶ 26} The corrections officer who observed the baggie fall out of Idler's bra also testified. She explained that during the intake process, the inmates must shower and change into a jail uniform. While Idler was preparing for her shower, she undressed. The corrections officer testified that as Idler undressed, the baggie fell out from her bra and that Idler picked it up, crumpled it in her hand, and placed it in the shower window. The corrections officer testified that Idler handed her the baggie upon demand, and that Idler said there was nothing it in it other than methamphetamine residue.

{¶ 27} Idler testified in her own defense, and claimed that she and a friend went to the victim's apartment on the day in question and that while she used the phone, her friend showed interest in the victim's gun. Idler testified that she observed her friend pick up the gun, but that she did not know her friend stole the gun until the following day. Idler further testified that she did not have the baggie on her person on the day she was taken to jail, that she had not done any drugs for approximately a month before her arrest, and that she did not know where the baggie came from.

{¶ 28} On appeal, Idler first claims that she cannot be convicted of the gun theft because she did not know the muzzleloader was operable. However, the state demonstrated that Idler obtained and exerted control over the gun once she stole it from the victim by removing the gun from the victim's apartment and taking it into her possession.

{¶ 29} Further, the victim testified that he specifically informed Idler that the muzzleloader was a pistol when she inquired about it. There is no indication in the record that Idler was given any reason to believe the gun was not operable before she took it from the victim's apartment. Moreover, the victim testified that the gun was operable, as he fired it on a previous occasion. Thus, this evidence is sufficient to support the gun-related charges.

{¶ 30} Idler next claims she did not act knowingly regarding the drug-related charges. However, the record demonstrates otherwise. Idler had several opportunities to disclose her possession of the drugs during either search that occurred before she undressed for her shower. Idler's passing on these opportunities to end her possession of the drugs before entering the facility demonstrates that she knowingly conveyed the baggie of methamphetamine into the jail. Additionally, Idler's immediate instinct to attempt to throw the baggie away, creating distance between her and its contents, is circumstantial evidence supporting her knowledge of its incriminating nature.

{¶ 31} After reviewing the record and considering all of Idler's arguments, we overrule her assignments of error because her convictions are supported by sufficient evidence.

{¶ 32} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.